**Case No. 25-30650**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

**Mario Rosales; Gracie Lasyone,**
**Plaintiffs - Appellees**

**v.**

**Jim Lewis, sued in his individual and official capacity; Samuel Terrell, sued in his individual and official capacity,**
**Defendants - Appellants**

---

**On Appeal from the United States District Court**
**For the Western District of Louisiana,**
**USDC No. 1:22-cv-05838,**
**Hon. Jerry Edwards, Jr, District Judge, and**
**Hon. Joseph H.L. Perez-Montes, Magistrate Judge, presiding**

---

**DEFENDANT - APPELLANT'S BRIEF**
**ON BEHALF OF**
**JIM LEWIS,**
**DEFENDANT - APPELLANT**

---

**H. Bradford Calvit (#18158)**
bcalvit@provosty.com
**Eli J. Meaux (#33981)**
emeaux@provosty.com
**John D. Ryland (#20355)**
jryland@provosty.com
**PROVOSTY, SADLER & DELAUNAY, APC**
**4615 Parliament Dr., Suite 200 (71303)**
**P.O. Box 13530**
**Alexandria, LA 71315-3530**
**Phone: (318) 767-3133   Fax: (318) 767-9588**
**ATTORNEY FOR DEFENDANT - APPELLANT,**
**JIM LEWIS**

**Case No. 25-30650**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

---

**Mario Rosales; Gracie Lasyone,
Plaintiffs - Appellees
v.
Jim Lewis, sued in his individual and official capacity; Samuel
Terrell, sued in his individual and official capacity,
Defendants - Appellants**

---

**On Appeal from the United States District Court
For the Western District of Louisiana,
USDC No. 1:22-cv-05838,
Hon. Jerry Edwards, Jr, District Judge, and
Hon. Joseph H.L. Perez-Montes, Magistrate Judge, presiding**

---

**CERTIFICATE OF INTERESTED PERSONS**

---

The undersigned counsel of record certifies that the following listed

persons and entities pursuant to Fifth Circuit Rule 28.2.1 have an interest

in the outcome of this case. These representations are made in order that

the judges of this Court may evaluate possible disqualification or recusal:

**PLAINTIFFS - APPELLEES:**
Mario Rosales; Gracie Lasyone

## COUNSEL FOR PLAINTIFFS - APPELLEES:

| | |
|---|---|
| Marie L Miller<br>Institute for Justice<br>3200 N Central Ave Ste 2160<br>Phoenix, AZ 85012<br>480-557-8300<br>Fax: 480-557-8305<br>Email: mmiller@ij.org<br>LEAD ATTORNEY | Joseph Pershing Beck, III<br>Law Offices of Joseph Beck<br>P O Box 6<br>Ball, LA 71405<br>318-640-9202<br>Fax: 318-640-9203<br>Email: joe@joebecklaw.com<br>ATTORNEY TO BE NOTICED |
| Patrick M Jaicomo<br>Anna Bidwell<br>Institute for Justice<br>901 N Glebe Rd Ste 900<br>Arlington, VA 22203<br>703-682-9320<br>Email: pjaicomo@ij.org<br>Email: abidwell@ij.org<br>ATTORNEYS TO BE NOTICED | |

## DEFENDANT - APPELLANT:
Jim Lewis

## COUNSEL FOR DEFENDANT - APPELLANT:
H Bradford Calvit (LEAD ATTORNEY)
Eli Jules Meaux
John D Ryland
PROVOSTY, SADLER, & deLAUNAY, APC
4615 Parliament Dr Ste 200
Alexandria, LA 71315-3530
318-445-3631 Fax: 318-767-9588
Email: bcalvit@provosty.com
Email: emeaux@provosty.com
Email: jryland@provosty.com

**DEFENDANT - APPELLANT:**

Samuel Terrell

**COUNSEL FOR DEFENDANT - APPELLANT:**

Misty S Antoon
Law Office of Misty S Antoon
2312 S MacArthur Dr
Alexandria, LA 71301
318-792-3514
Email: misty@antoonlaw.com
LEAD ATTORNEY

**OTHER INTERESTED PARTY - DEFENDANTS:**

The City of Alexandria and Ronney Howard

**COUNSEL FOR OTHER INTERESTED PARTY - DEFENDANTS:**

Misty S Antoon
Law Office of Misty S Antoon
2312 S MacArthur Dr
Alexandria, LA 71301
318-792-3514
Email: misty@antoonlaw.com
LEAD ATTORNEY

**DISTRICT COURT JUDGE AND MAGISTRATE JUDGE:**

Hon. Jerry Edwards, Jr.
United States District Judge
515 Murray St., Suite 233
Alexandria, Louisiana 71301
(318) 484-1210
Email: edwards_motions@lawd.uscourts.gov

Hon. Joseph H. L. Perez-Montes
United States Magistrate Judge
U. S. Court House and Post Office Building
515 Murray St., Room 331
Alexandria, Louisiana 71301
(318) 473-7510
Yvonna Tice, Judicial Assistant
Email: yvonna_tice@lawd.uscourts.gov

Respectfully Submitted:

**PROVOSTY, SADLER & DELAUNAY, APC**

/s/H. Bradford Calvit
H. Bradford Calvit (#18158)
bcalvit@provosty.com
Eli J. Meaux (#33981)
emeaux@provosty.com
John D. Ryland (#20355)
jryland@provosty.com
4615 Parliament Dr., Suite 200 (71303)
P.O. Box 13530
Alexandria, LA 71315-3530
Phone: (318) 767-3133 Fax: (318) 767-9588
ATTORNEY FOR DEFENDANT - APPELLANT,
JIM LEWIS

## STATEMENT REGARDING ORAL ARGUMENT

As this matter only requires the Court to review the pleadings, video, and applicable law, Jim Lewis avers that oral argument is not necessary here. However, Lewis reserves the right to appear and argue (and does not waive said right) should the Court set the matter for oral argument on either its own direction or at the request of Appellees.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS . . . . . . . . . . . . . . . . . . 2-5

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . 6

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-14

I.    STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . 15

II.   STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . 16-17

III.  STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . 18-38
      A.   Video of the Incident . . . . . . . . . . . . . . . . . . . . . . . . . 20-28
      B.   Appellees' Allegations and Claims . . . . . . . . . . . . . . . 28-33
      C.   Course of Proceedings and Disposition . . . . . . . . . . . . 33-38

IV.   SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . 38-39

V.    LAW AND ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40-71
      A.   Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . 40-41
      B.   Qualified Immunity . . . . . . . . . . . . . . . . . . . . . . . . . . . 41-42
      C.   No Violation of a Right . . . . . . . . . . . . . . . . . . . . . . . . 43-59
           1.   Count One . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43-47
           2.   Count Two . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47-52
           3.   Count Three . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52-57
           4.   Count Four . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57-59
      D.   Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . 59-71

VI.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 71

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . 73-74

CERTIFICATE OF COUNSEL FOR DEFENDANT-APPELLANT . . 75

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . 76

# TABLE OF AUTHORITIES

## CASES:

Atteberry v. Nocona Gen. Hosp.,
    430 F.3d 245, 253 (5th Cir.2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 54

Bates v. Normand,
    703 F. Supp. 3d 775, 790 (W.D. La. 2023) . . . . . . . . . . . . . . . . . . 60

Bernhard Mech. Contractors, Inc. v. St. Paul Companies,
    2008 WL 3244145, at *5 (5th Cir. 8/8/08). . . . . . . . . . . . . . . . . . . . 46

Breaux v. Dilsaver,
    254 F.3d 533, 538 (5th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . 46

Burton v. Owens,
    511 F. App'x 385, 388 (5th Cir. 2013) (per curiam) . . . . . . . . . . . 41

City of Escondido, Cal. v. Emmons,
    586 U.S. 38, 42, 139 S. Ct. 500, 503, 202
    L.Ed. 2d 455 (2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Dandridge v. Williams,
    397 U.S. 471, 476, 90 S. Ct. 1153, 1157, 25
    L. Ed. 2d 491 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

Dave v. Laird,
    2021 WL 7367084, at *13 (S.D. Tex. 11/30/21). . . . . . . . . . . . 69-70

Davila v. United States,
    713 F. 3d 248, 259 (5th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . 52

District of Columbia v. Wesby,
    583 U.S. 48, 65, 138 S. Ct. 577, 591, 199
    L. Ed. 2d 453 (2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

Durant v. Brooks,
    826 F. App'x 331 (5th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

Durant v. Gretna City,
    2020 WL 263669, at *1 (E.D. La. 1/17/20),
    aff'd sub nom . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 69

Elphage v. Gautreaux,
    969 F. Supp. 2d 493 (M.D. La. 2013) . . . . . . . . . . . . . . . . . . . 43-44

Guerra v. Castillo,
    82 F. 4th 278, 285 (5th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . 41,60

Harlow v. Fitzgerald,
    457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982) . . . . 41

Hartman v. Walker,
    685 F. App'x 366, 368 (5th Cir. 2017) (per curiam) . . . . . . . . . . . 20

Hernandez v. Tex. Dep't of Protective & Regulatory Servs.,
    380 F.3d 872, 883–84 (5th Cir.2004) . . . . . . . . . . . . . . . . . . . . . . . 54

Illinois v. Wardlow,
    528 U.S. 119, 124, 120 S.Ct. 673, 676, 145
    L.Ed.2d 570, 576 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

Joseph on behalf of Estate of Joseph v. Bartlett,
    981 F.3d 319,330 (5th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Kentucky v. Graham,
    473 U.S. 159, 165, 105 S. Ct. 3099, 3105, 87
    L. Ed. 2d 114 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Lincoln v. Turner,
    874 F.3d 833, 848-849 (5th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . 42

Maryland v. Wilson,
        519 U.S. 408, 117 S. Ct. 882, 137 L. Ed. 2d 41 (1997) . . . . . . . . . 53

Meadours v. Ermel,
        483 F.3d 417, 421 (5th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . 54

Minnesota v. Dickerson,
        508 U.S. 366, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993) . . . . 64-65

Monell v. New York City Dept. of Social Services,
        436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56
        L.Ed.2d 611 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Morgan v. Swanson,
        659 F.3d 359,371 (5th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . 41

Nieves v. Bartlett,
        587 U.S. 391, 398, 139 S. Ct. 1715, 1722, 204
        L. Ed. 2d 1 (2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

Penney v. Wolsey,
        2008 WL 2704303(S.D. Tex. 6/3/08), report and recommendation
        adopted in part, 2008 WL 2704301 (S.D. Tex. 7/10/08) . . . . . 50-51

Pennsylvania v. Mimms,
        434 U.S. 106, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977) . . . . . . . . . . 53

Rincon v. City of Laredo, Texas,
        2025 WL 603883, *6 (5th Cir. 2/25/25). . . . . . . . . . . . . . 37,40,46,70

Rincon v. Elizondo,
        2022 WL 4241662, at *3 (S.D. Tex. 8/24/22). . . . . . . . . . . . . . . . . 42

Rodriguez v. United States,
        575 U.S. 348, 357 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

Roy v. City of Monroe,
       950 F.3d 245 (5th Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

Sanchez v. Swyden,
       139 F.3d 464, 466 (5th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . 42

Scott v. Harris,
       550 U.S. 372, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) . . . . . . . 20

State v. Lopez,
       00-562 (La. 10/30/00), 772 So. 2d 90, 92-93 . . . . . . . . . . . . . . . . 51

Stewart v. Murphy,
       174 F. 3d 530 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 54

Tarver v. City of Edna,
       410 F.3d 745, 752–54 (5th Cir.2005) . . . . . . . . . . . . . . . . . . . . . . . 54

Terrell v. Town of Woodworth,
       2024 WL 667690, at *2 (5th Cir. 2/19/24) . . . . . . . . . . . . . . . . 20,45

Terry v. Ohio,
       392 U.S. 1, 30, 88 S. Ct. 1868, 1884, 20
       L. Ed. 2d 889 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Trent v. Wade,
       776 F.3d 368, 376 (5th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . 15

Turner v. Lieutenant Driver,
       848 F. 3d 678 (5th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 68

United States v. Abdo,
       733 F.3d 562, 565 (5th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . 53

United States v. Alkheqani,
       78 F. 4th 707, 720 (5th Cir. 2023) . . . . . . . . . . . . . . . . . . . . . . 55-56

United States v. Alvarez,
      837 Fed. Appx. 296 (5th Cir. 2020) . . . . . . . . . . . . . . . . . . . 47,50,53

United States v. Brigham,
      382 F.3d 500, 508 (5th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . 48

United States v. Castillo,
      804 F.3d 361, 367 (5th Cir. 2015). . . . . . . . . . . . . . . . . . . . . 41,47

United States v. Hill,
      545 F.2d 1191, 1193 (9th Cir.1976) . . . . . . . . . . . . . . . . . . . . . . 54

United States v. McSween,
      53 F.3d 684, 687 n.3 (5th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . 46

United States v. Pack,
      612 F.3d 341 (5th Cir.) opinion modified on denial of reh'g,
      622 F.3d 383 (5th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

United States v. Portillo-Saravia,
      379 F. Supp. 3d 600, 613 (S.D. Tex. 2019) . . . . . . . . . . . . . . . . 48

United States v. Reyes,
      349 F.3d 219, 225 (5th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . 54

United States v. Rodriguez,
      802 F. App'x 90, 97 (5th  Cir. 2020) . . . . . . . . . . . . . . . . . . . . . . 44

United States v. Soriano,
      976 F.3d 450, 458 (5th Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . . 57

United States v. Thomas,
      2021 WL 1957412 (5th Cir. 5/17/21) . . . . . . . . . . . . . . . . . . . . . 67

[U.S. v.]Lopez–Moreno,
      420 F.3d at 430 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

U.S. v. Montes-Hernandez,
    350 Fed. Appx. 862 (5th Cir. 2009) . . . . . . . . . . . . . . . . . . . 44-45,61

Washington v. Smith,
    639 F. Supp. 3d 625 (E.D. La. 11/8/22) . . . . . . . . . . . . 47,48,63,64

## STATUES/ARTICLES/RULES/OTHER:

28 U.S.C. § 1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

28 U.S.C. § 1367 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15,40-42,54

Federal Rule of Appellate Procedure 4(a)(1)(A) . . . . . . . . . . . . . . . . . 15

Federal Rule of Civil Procedure 12, 12(b), 12(c) . . . . . . . . . . . . . passim

Fifth Circuit Rule 28.2.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

First Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fourth Amendment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

La. C.Cr. P. Art. 215.1(D). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

La. R.S. 32:104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31,45

La. R.S. 32:104(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18,21,44

La. R.S. 32:104(D) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18,44,45,47

La. R.S.47:513. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

## I.    STATEMENT OF JURISDICTION

The United States District Court for the Western District of Louisiana, Alexandria Division, had subject matter jurisdiction over Appellees' 42 U.S.C. § 1983 claims and various state law claims, including those against Jim Lewis, under 28 U.S.C. § 1343 and 28 U.S.C. § 1367.

This Court has jurisdiction over Jim Lewis' appeal of the District Court's denial of his motion for judgment on the pleadings asserting qualified immunity under the Collateral Order Doctrine, because this case turns purely on a question of law involving whether Appellees suffered a violation of their constitutional rights to be free from unlawful search and seizure, and to exercise free speech, and whether Lewis' actions violated clearly established constitutional principles. Trent v. Wade, 776 F.3d 368, 376 (5th Cir. 2015).

Lewis timely filed a Notice of Appeal on November 5, 2025, seeking reversal of the District Court's Judgment adopting the Magistrate's Report and Recommendation denying judgment on the pleadings, entered on October 6, 2025 (ROA.1274), which filing was within thirty days as required by Federal Rule of Appellate Procedure 4(a)(1)(A).

## II.    STATEMENT OF THE ISSUES

1.    An officer is entitled to qualified immunity as a matter of law when he commits no constitutional violation.  Lewis observed a traffic offense and initiated a stop based on that violation. Every action he took during that stop was based on his reasonable suspicion, formed by his observation of traffic offenses, or on reasonable suspicion which he developed during the initial investigation of the traffic offenses.  He committed no constitutional violation against either Rosales or Lasyone during the stop.

2.    Even if Lewis violated the Fourth and/or First Amendments, he enjoys qualified immunity if his actions did not violate a clearly established constitutional right.  The District Court erred when it found that the "clearly established" rights of Rosales and Lasyone regarding the initial stop was only, "officers cannot stop motorists without reasonable suspicion of criminal activity," an overly general statement of law which violates the Supreme Court's requirement that qualified immunity rights not be based on such generalities.  The District Court similarly erred when it found that "The Fourth Amendment prohibits prolonging a traffic

stop beyond the time reasonably required to address the traffic violation and attendant safety concerns" was the applicable "clearly established" law for the extension of the stop claim.  The District Court similarly erred when it found that the only necessary "clearly established" law for the Terry Frisk and Search counts was the axiom that, "to appropriately conduct a frisk under Terry, officers must have a reasonable suspicion that the subject is 'armed and dangerous.'" The District Court similarly erred in failing to examine fact-specific similar case law when presented by the parties to the First Amendment Recording claims.  This represents a total rejection of the Supreme Court's instruction that, "Under our cases, the clearly established right must be defined with specificity. "This Court has repeatedly told courts ... not to define clearly established law at a high level of generality."  City of Escondido, Cal. v. Emmons, 586 U.S. 38, 42, 139 S. Ct. 500, 503, 202 L. Ed. 2d 455 (2019).  No case law from this Circuit or the United States Supreme Court has held that under a totality of the circumstances as presented to Lewis, any of his actions were or would be understood by a reasonable officer to be unconstitutional.

## III. STATEMENT OF THE CASE

This matter arises from a traffic stop of the Appellees on June 15, 2022 in Alexandria, Louisiana. Rosales was driving his vehicle on Jackson Street Extension when Lewis and his fellow officer, Samuel Terrell, observed Rosales fail to first signal a lane change, then fail to properly signal a left turn. Those failures violated Louisiana traffic law, specifically La. R.S. 32:104(B)(requiring signaling at least 100 feet prior to turning) and La. R.S. 32:104(D)(requiring signaling prior to changing lanes), providing reasonable suspicion for Lewis and Terrell to execute a traffic stop of Rosales' vehicle. After initiating the traffic stop at issue, Lewis and Terrell questioned Rosales and his passenger, Gracie Lasyone, concerning various matters as they investigated first Rosales' traffic violation and then other potential violations. All material facts of the stop and investigation were captured on video, a version of which was attached to the Appellees' initial Complaint via link, while an unedited clip was filed with the Motion to Dismiss by the City of Alexandria and Samuel Terrell. (ROA.34,808). That video, along with Louisiana law and federal jurisprudence, shows that at its outset the traffic stop was lawful due to

Lewis' observation of Rosales' traffic violations. Further, the length of the stop was driven by the need to secure the driver's license, proof of insurance, and valid registration and then to investigate various factual incongruities that led to reasonable suspicion(s) during the course of the stop principally through the Appellees' inconsistent statements and lack of candor regarding a firearm in the vehicle. Said suspicions allowed the officers to constitutionally extend the stop for both investigative and safety reasons. Coupled with long acknowledged constitutional actions which go hand-in-hand with investigative stops (i.e. removing all individuals from the vehicle, separate questioning, searches for officer safety) the length of the stop, and all actions taken by Lewis during the stop were constitutional.

Feeling aggrieved by the traffic stop, Rosales and Lasyone have filed the instant suit alleging that  Lewis and Terrell violated their civil rights during the stop, and that the City's policies causally contributed to said violation. Lewis filed a Motion for Judgment on the Pleadings pursuant to Rule 12(c) arguing that even taking the well-pleaded allegations of the Complaint as true, including the video of the incident which was attached

to the Complaint, he was entitled to qualified immunity from the Appellees' claims.

## A.    Video of the Incident

The Appellees attached portions of the video of the incident as well as still images from that video to their Complaint. (ROA.34)[1]. These were properly considered on the Appellants' Rule 12 motions as "on a motion to dismiss, the court is entitled to consider any exhibits attached to the complaint, including video evidence." Hartman v. Walker, 685 F. App'x 366, 368 (5th Cir. 2017) (per curiam), See also Terrell v. Town of Woodworth, 2024 WL 667690, at *2 (5th Cir. 2/19/24). Accordingly, the video should be considered here and this Court may rely upon the video when it blatantly contradicts the Plaintiffs' allegations. Scott v. Harris, 550 U.S. 372, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007).

Video of the incident, from the Dash Cam of the Appellant's vehicle,

---

[1] Lewis will discuss those videos pertinent to his underlying arguments, principally the Dash Cam Video and his own Body Worn Camera video. Though the videos are attached in Appellees' Complaint, citation herein will be made to those videos as manually attached to Terrell's underlying Motion to Dismiss. (ROA.808). Regarding the other videos attached to Appellees' Complaint, Lewis adopts herein, by reference, any discussion of these, or other videos, by Co-Appellant Terrell in his separately filed Brief concerning this matter.

shows Rosales' red car move from the right lane of Jackson Street to the left lane without signaling. (ROA.808, Manual Attachment A-1, Dash Camera Footage 0:21-0:24). As the video continues, the red car is seen engaging its left turn signal just before it gets to the traffic signal at Dorchester Drive, less than 100 feet from that signal. Both of these are violations of Louisiana traffic law. La. R.S. 32:104(B) and (D). The Dash Cam video continues, showing Lewis enter the left lane and following behind Rosales' vehicle when it turns on Dorchester Drive, and then Rosales pulling over. The rest of the stop is also captured by Lewis and Terrell's body cameras.

Lewis' body camera footage shows that upon stopping the Rosales vehicle, he exited his patrol unit and read off the Rosales vehicle's license plate which the video shows is a New Mexico plate. (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 0:01-0:40). As Lewis approached the vehicle, Rosales has already exited the vehicle and can be seen speaking to Terrell. Lewis then approaches the passenger side of the Rosales vehicle and knocks on the passenger window. At that time Gracie Lasyone lowers the passenger side window and Lewis begins speaking to

21

her, asking her age and to see her ID. She gives Lewis her ID, and he walks with it to the front of the patrol unit where Terrell and Rosales are standing. As he approaches, Lewis asks Rosales whether he has a gun in the car. (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 1:00-1:04). Rosales admits that he has a firearm in a bag in the vehicle but answers that he does not have a firearm on him. (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 1:10-1:15). At that time, Terrell performs a pat down on Rosales and Lewis asks if he can retrieve the firearm from Rosales' vehicle. Rosales denies permission to search his vehicle and Lewis heeds that instruction. (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 1:24-1:30). After he was denied permission to remove the firearm from the vehicle (for officer safety), Lewis walked to the passenger side door again and asked Lasyone to exit the vehicle (again for officer safety)(ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 1:40). Lewis, still concerned about the presence of a firearm, asked Lasyone whether she had a gun, and she denies that she does while Lewis directs her to stand near the front of the patrol unit. (ROA.808, Manual Attachment A-2, Officer Lewis Body

22

Camera 1:52). Lewis then walks to the driver side door, and looks through the windows of the vehicle before return to Rosales near the patrol unit. (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 2:05-2:10). After approaching Rosales, Lewis informs him of his rights, and Rosales acknowledges the recitation. (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 2:30). Lewis then proceeds to question Rosales, after telling Rosales that he does not have to answer if he is uncomfortable and can say "pass" at any time. (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 2:45). Lewis questioned Rosales regarding how long he had been in Louisiana, and Rosales stated that he was originally from New Mexico but was trying to get residency in Louisiana. (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 3:00-3:05). He further stated that he worked at Atlas Home Service and had been trying to buy a home. (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 3:10). He was then asked if he had ever been arrested and stated that he had not. (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 3:15). He was next asked if he minded emptying his pockets for Lewis, in response to which he looked

23

around and Lewis stated that "it was a question" referring to his earlier statement that Rosales could pass on any question that made him uncomfortable. Rosales then placed his keys and wallet on the hood of the Officers' vehicle (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 3:25). Lewis then asks if Rosales "minded if he checked" referring to a pat down. (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 3:35). At this point Rosales states that he would feel safer if Gracie had her phone out recording, and Lewis gestures to his own body camera recording. (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 3:48). Rosales then mentions that the last time he was in an encounter with police, body camera footage was lost. (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 3:52). Lewis then began to explore Rosales' self-reported previous run in with law enforcement during the course of which he promises Rosales that he will not lose his body cam footage. (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 3:55-4:00). As Lewis questioned Rosales, he asked Terrell to move Gracie to the side. (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 4:14). Lewis then reiterated that Rosales was free to forgo

responding to any of Lewis' questions. (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 4:21). Lewis then asked if there was anything in the vehicle including various drugs and whether Rosales had been arrested: Rosales answered in the negative to all of these. (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 4:21-5:00). Lewis next moved to questions concerning Rosales' presence in Louisiana. (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 5:00). Rosales stated that he started coming to Louisiana in October, and goes back every once in a while. (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 5:20). Lewis asked if Rosales lives "here" and Rosales responded that he was trying to establish his residency in Louisiana. (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 5:25). Lewis asked where Rosales lived, and Rosales told him "in Dry Prong." (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 5:32). Rosales then further discussed the steps he was taking to establish residency. (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 5:40-5:45). In response to this information, Lewis noted that Louisiana law on registration of vehicles requires that it be registered within 30

days of moving and asked if Rosales still had a New Mexico license (Rosales admitted he did). (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 5:50-6:30). Rosales stated that the last time he had been back to New Mexico was at Easter. (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 6:35). Continuing, he told Lewis that Gracie was his girlfriend, and that he lived with her. (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 7:00). Lewis then asked where Rosales was heading, and Rosales responded that he had just gone to the bank and was heading to Bunkie, LA to look at a car part. (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 7:13-7:36). Lewis continued speaking to Rosales, until he switched places with Terrell to speak to Lasyone. (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 8:10). Lewis begins by introducing himself to Lasyone and asked if Terrell had advised her of her rights. (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 8:20). He asks if she minds answering a few questions and she states that she does not. (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 8:20-8:27).  Like with Rosales, Lewis tells Lasyone that she can pass on any of his

26

questions at any time. (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 8:28). He asked her similar questions as those asked Rosales, such as whether she had ever been arrested (she responded that she had not) and where they were coming from (she initially stated that they had come from work, but eventually remembered the bank). (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 8:40-8:50).  He quickly asked if there was anything in the car she should not have (she responded no), if she smoked marijuana or used other drugs (she had not). (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 8:50-9:21).  After his brief questioning of Lasyone, Lewis returned to the front of his vehicle where Terrell was speaking to Rosales before walking over to the open passenger door of the Rosales vehicle and looking inside. (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 9:21-10:15). Lewis then walked around to the closed driver door and looked through the window. (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 10:20-10:41). He next went back to the patrol unit, and when he walked up, Rosales stated that Lasyone was "not a part of this" and asked that she be allowed to grab her phone out of their vehicle.

27

(ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 10:45). Lewis tells them that Lasyone, as a passenger, is involved in the stop, and has been removed from the vehicle due to the admitted presence of a firearm in the vehicle. (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 10:45-11:15). Lasyone asks if she is able to get her phone, and Lewis tells her no. (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 11:16). Lewis then enters the patrol unit, discusses the stop with Terrell as Terrell runs necessary checks, This takes roughly 8 minutes. Lewis then exits his vehicle for the last time while Terrell presents the citation to Rosales which takes roughly 2 total minutes. (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 19:20-21:45). All told, the stop takes about 22 minutes.

### B.    Appellees' Allegations and Claims

Many of Appellees allegations are belied by the video evidence. They allege that during the 22 minute stop, Lewis and Terrell, in their individual capacities, violated their rights in the following manners:

1.    Unreasonable seizure in detaining the Appellees without reasonable suspicion in violation of the Fourth Amendment (Count 1); (ROA.57-58).

2.    Unreasonable seizure in expanding the duration of the stop without reasonable suspicion in violation of the Fourth Amendment (Count 2);(ROA.58-59).

3.    Unreasonable searches in violation of the Fourth Amendment (Count 3);(ROA.60-61).

4.    Preventing them from recording the Defendants' activities in violation of the First Amendment (Count 4).(ROA.61).

The Appellees also included two additional Counts aimed at the City of Alexandria and Lewis and Terrell in their official capacities (legally the same suit as against the City)[2] which are not at issue here. (ROA.62-65). These Counts are elucidated over the course of nearly 300 Paragraphs including many that restate, verbatim, portions of the video.  They also attach the video to their Complaint using external links. (ROA.34). As the video provides clear evidence of what actually happened, Lewis will highlight to the Court those allegations which are pertinent to the individual actions which precipitated each Count.

Discussing the Initial Stop, the Appellees plead that as Rosales

---

[2] See Kentucky v. Graham, 473 U.S. 159, 165, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985)("Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent'.")(quoting Monell v. New York City Dept. of Social Services, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55, 56 L.Ed.2d 611 (1978)).

approached Dorchester Drive, he turned on his left turn signal, approached the light which was red, and stopped. (ROA.34-35). About 10 to 15 seconds later, the Appellants' vehicle stopped behind Rosales, and when the light turned green and Rosales turned left, the Appellants followed, engaging their sirens and lights in the intersection. (ROA.35). Appellees allege that, "contradicted by clear video evidence, the officers would later claim to have pulled the car over for failure to signal." (ROA.35). What the Appellees fail to include, which is dispositive to the reasonableness of the initial stop, are any of the alleged facts about the separate violation of failure to signal to indicate a lane change. That traffic violation is depicted in the "clear video evidence" and the Appellees have not pleaded that Rosales properly signaled his lane change (rightfully so, as no signal was made as shown on the video). Accordingly, the Complaint is facially insufficient as will be discussed below.

Appellees allegations concerning the searches (and attendant allegedly unconstitutional extension of the stop) is similarly contradicted by video evidence. First, Appellees admit, somewhat paradoxically that Rosales calmly told Terrell that he was getting agitated (ROA.36).

Appellees allege Rosales was asked, while outside of the vehicle, whether he had a firearm in the vehicle, then later rejected Lewis' request to remove that firearm during the encounter. (ROA.36-38). Appellees go on to allege that when Terrell frisked Rosales for officer safety, this was an impermissible extension of the length and scope of the stop.(ROA.37). Appellees conclusorily assert that officers had no particularized reason to believe Rosales was armed, dangerous, or was lying. (ROA.37). Appellees acknowledge that Lewis and Terrell believed they had probable cause to make the stop under La. R.S. 32:104 concerning turn signaling. (ROA.38). Lewis questioned Rosales about his residency status and any previous arrests, and asked Rosales, "Do you mind emptying your pockets for me on the hood of my car?" (ROA.39-40). Rosales then reached into his own pockets and pulled out the contents. (ROA.40-41). Appellees speculate, without evidence or basis in fact, that the officers would have searched Rosales had he not consented, ignoring that the officers did not retrieve Rosales' firearm from the vehicle after he denied consent to do so. (ROA.40). Appellees allege that this search unlawfully extended and expanded the scope of the stop. (ROA.41).

Regarding the allegedly unconstitutional extension of the stop, the Appellees generally allege that everything done by the officers was unnecessary or unconstitutional in some way, for some reason, and accordingly essentially all actions unlawfully extended the stop. Though they have argued different aspects of the stop unlawfully extended it in various memoranda, in the Complaint they specifically alleged that the frisk, the alleged search, and questioning Rosales about potential drug crimes all unlawfully extended the stop. (ROA.37, 41, 45).

Finally, regarding the First Amendment claims, the Appellees allege that it first arose when Rosales asked that Lasyone be allowed to go back into the vehicle, after she had been removed, in order to retrieve her phone to record a potential search. (ROA.41). Appellees allege that Rosales was allowed to use his phone earlier to retrieve insurance information, and the officers had no reason to believe that Rosales or Lasyone would be disruptive when recording. (ROA.42-43). Rosales only asks to record anything, during the stop itself, when the encounter was near its end. (ROA.52). Appellees do not acknowledge, at any point during their Complaint, that Lasyone's phone and Rosales' gun and ammunition

were in the same location (the interior of the vehicle) or why the officers might have considered this fact (their safety) when preventing her from returning to the vehicle. Appellees note that both officers referred to their own body worn cameras recording the incident on multiple occasions (and the Appellees have certainly utilized those recordings in this matter despite their self-professed belief that the footage would not be retained) (ROA.42, 52).

Throughout the Complaint, because they could do nothing else in the face of the video evidence, the Appellees acknowledge that both officers maintained that Rosales' failure to signal was the reason for the stop. Lewis mentions it as their probable cause.(ROA.38). Terrell tells Lasyone (ROA.48) and Rosales separately that the reason for the stop was for failure to signal. (ROA.51). The officers discuss the same failure to signal probable cause inside of their vehicle. (ROA.53). At all times Lewis and Terrell reasonably believed that the stop was made because they observed Rosales fail to signal.

## C.   Course of Proceedings and Disposition

Appellees' Complaint was filed on November 1, 2022. (ROA.28).

Appellants answered that Complaint on December 21, 2022. (ROA.102). After litigation commenced, discovery began, but was subsequently stayed for a period. After that stay was lifted, the Appellants separately moved for Judgment on the Pleadings pursuant to Rule 12(c) (on December 2, 2024 and December 18, 2024), arguing that they were entitled to qualified immunity from Appellees' claims. (ROA.749-810, 864-890). Appellees opposed those Motions on January 9, 2025 and Appellants filed Reply Memoranda on January 27, 2025. (ROA.900-58, 1005-1046). The Magistrate Judge issued his Report and Recommendation denying the Appellants' Motions on August 29, 2025. (ROA.1060). The Appellants filed Objections to the Report and Recommendation on September 19, 2025 (Lewis) and September 25, 2025 (Terrell). (ROA.1079-1098, 1184-1237). Appellees filed a Response to those Objections on October 3, 2025. (ROA.1238). On October 6, 2025 the District Court issued its Order adopting the Magistrate Judge's Report and Recommendation. (ROA.1269). Timely Notices of Appeal shortly followed. (ROA.1271-1277).

In its Order, the District Court adopted the Magistrate Judge's views, presented in the terse Report and Recommendation, and found that

Lewis was not entitled to qualified immunity on any of the Appellees' claims. Regarding the Initial Stop, the District Court held that the clearly established law was only that: "For a traffic stop to be justified at its inception, an officer must have "objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." [U.S. v.]Lopez–Moreno, 420 F.3d at 430" and that, "officers cannot stop motorists without reasonable suspicion of criminal activity. . . 'it was well established at the time of the traffic stop that the Fourth Amendment does not permit the fabrication of traffic offenses against innocent persons as a pretextual reason to detain them, and no reasonable officer would believe otherwise'." (ROA.1064-1065). Based on this statement, the Magistrate Judge found that the video did not show clearly that Rosales signaled for the required 100 feet, but because he pleaded he used his turn signal, the Appellees' claims regarding the initial stop were plausible and sustainable. (ROA.1064-1065). The Magistrate Judge completely omitted any discussion or consideration of the second traffic offense which permitted the initial stop–failure to signal prior to a lane change–and the District Court's

Order adopting the Report and Recommendation similarly omits this argument. (ROA.1060, 1269).

Regarding the Extension of the Stop claims, the District Court held that the clearly established law was only that, "The Fourth Amendment prohibits prolonging a traffic stop beyond the time reasonably required to address the traffic violation and attendant safety concerns. Rodriguez v. United States, 575 U.S. 348, 357 (2015). "Authority for the seizure . . . ends when tasks tied to the traffic infraction are—or reasonably should have been—completed."(ROA.1065).  After reciting the allegations of the Complaint that the stop was improperly prolonged, and without any discussion of the video or the Appellants' arguments, the District Court simply found that "this claim is both plausible and sustainable." (ROA.1066).

Regarding the Terry Frisk and Search claims, the District Court held that the clearly established law was merely, "To appropriately conduct a frisk under Terry, officers must have reasonable suspicion that the suspect is "armed and presently dangerous." Terry v. Ohio, 392 U.S. 1, 30 (1968)." (ROA.1066). Relying only on this axiomatic statement of law

and a brief recitation of the parties' arguments the District Court denied the Rule 12(c) Motions. (ROA.1066).

Regarding the First Amendment Recording claims the District Court held that the clearly established law, "is well-settled that the First Amendment protects the right to record police officers performing their official duties in public, subject only to reasonable time, place, and manner restrictions." (ROA.1066-1067). Further, "'If an official takes adverse action against someone based on that forbidden motive, and 'non-retaliatory grounds are in fact insufficient to provoke the adverse consequences,' the injured person may generally seek relief by bringing a First Amendment claim'." (ROA.1067)(citing Rincon v. City of Laredo, Texas, No. 24-40168, 2025 WL 603883, at *4 (5th Cir. 2/25/25) (quoting Nieves v. Bartlett, 587 U.S. 391, 398, 139 S. Ct. 1715, 1722, 204 L. Ed. 2d 1 (2019)). Based on the Appellees' assertions that they were prohibited from recording (without any reference at all to the video which captures the entire encounter) the District Court held that they had stated a plausible and sustainable claim under the First Amendment. (ROA.1067). As will be detailed herein, the District Court erred by failing to grant

37

Lewis qualified immunity on the grounds that his actions did not violate the Appellees' civil rights and further erred in determining that the law under which he allegedly did so was clearly established at the time.

## IV.  SUMMARY OF THE ARGUMENT

Officer Lewis observed Mario Rosales commit a traffic violation when he saw Rosales switch lanes without signaling, then later fail to signal within 100 feet of turning.  That observation provided the reasonable suspicion necessary to stop Rosales' vehicle. During the course of that properly initiated stop, Lewis, along with fellow officer Samuel Terrell, asked routine questions of Rosales and his passenger, Gracie Lasyone, that led them to reasonably suspect that further criminality may have been afoot. Based on well-established case law this allowed Lewis to extend the stop while investigating these new suspicions. During that process, Lewis also took multiple steps to insure officer safety, such as removing Rosales and Lasyone from the vehicle, conducting routine pat down searches with their permission, asking about the presence of firearms, and refusing to allow Rosales or Lasyone to go back into the vehicle once a firearm was disclosed and ammunition was discovered.

Once the officers' suspicions were reasonably investigated, citations were issued and all parties went about their business. All told the stop took roughly 22 minutes. All relevant facts and circumstances are on video including Rosales' traffic violations. That video shows that contrary to Plaintiffs' allegations, the stop and its length because of the need to investigate further the presence of the gun, Rosales' potential residency issues, and observed hesitancy in responding to Lewis' questioning. The video further shows that any searching was done for officer safety and/or with Rosales' consent. Finally, the video shows that far from being barred from filming the encounter, Lewis did not allow Lasyone to retrieve her phone for officer safety reasons (she could just as easily retrieve the gun as her cellphone if allowed back into the vehicle) and that Rosales only asked to record himself in the midst of the encounter. Based on the video, Appellees' claims should have been dismissed on the merits.

Alternatively, Lewis will show that he is entitled to qualified immunity as there is an absence of clearly established law which would have alerted every reasonable officer that his actions violated anyone's rights at the time of the incident.

## V.    LAW AND ARGUMENT

### A.    Standard of Review

"We review a district court's ruling on a Rule 12(c) motion for judgment on the pleadings de novo," using "the same standard as a motion to dismiss under Rule 12(b)(6) for failure to state a claim." Gentilello v. Rege, 627 F.3d 540, 543–44 (5th Cir. 2010). This standard requires us to "accept[ ] all well-pleaded facts as true and view[ ] those facts in the light most favorable to the plaintiff." Stokes v. Gann, 498 F.3d 483, 484 (5th Cir. 2007) (per curiam). "[A] plaintiff must plead sufficient facts to 'state a claim to relief that is plausible on its face.' " Gentilello, 627 F.3d at 544 (cleaned up) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).
Rincon v. City of Laredo, Texas, 2025 WL 603883, at *3 (5th Cir. 2/25/25).

 But "we do not accept as true legal conclusions, conclusory statements, or naked assertions devoid of further factual enhancement." Anokwuru v. City of Hous., 990 F.3d 956, 962 (5th Cir. 2021) (cleaned up). "To survive a Rule 12(b)(6) motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level." Id. at 963 (internal quotation marks and citation omitted).
. . .
When confronted with a qualified-immunity defense at the pleadings stage, the plaintiff must plead "facts which, if proved, would defeat [the] claim of immunity." Waller v. Hanlon, 922 F.3d 590, 599 (5th Cir. 2019) (quoting Westfall v. Luna, 903 F.3d 534, 542 (5th Cir. 2018)). The pleading standards remain "the same when a motion to dismiss is based on qualified immunity. The crucial question is whether the complaint pleads facts that, if true, would permit the inference that Defendants are liable under § 1983[,] and would overcome their qualified immunity defense." Terwilliger v. Reyna, 4

40

F.4th 270, 279-80 (5th Cir. 2021) (internal quotations and citations omitted). At the motion to dismiss stage, "[i]t is the plaintiff's burden to demonstrate that qualified immunity is inappropriate." Id. at 280 (citing Club Retro, L.L.C. v. Hilton, 568 F.3d 181, 194 (5th Cir. 2009)).
Guerra v. Castillo, 82 F. 4th 278, 284–85 (5th Cir. 2023).

## B.    Qualified Immunity

"Government officials sued for damages under § 1983 are entitled to qualified immunity, and thus protected from liability for civil damages, as long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Burton v. Owens, 511 F. App'x 385, 388 (5th Cir. 2013) (per curiam) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)). "The plaintiff's burden is a formidable one." Roy v. City of Monroe, 950 F.3d 245 (5th Cir. 2020). A plaintiff bringing a constitutional violation claim has the ultimate burden to show that a defendant violated a constitutional right - - that is, the plaintiff must make this showing whether or not qualified immunity is involved. Joseph on behalf of Estate of Joseph v. Bartlett, 981 F.3d 319,330 (5th Cir. 2020) and Morgan v. Swanson, 659 F.3d 359,371 (5th Cir. 2011).

Even if the Appellees can establish that their rights were violated,

they must still show that Lewis' actions were objectively unreasonable in light of clearly established constitutional law. They, "must point to case law showing the federal right is 'sufficiently clear to put a reasonable officer on notice that certain conduct violates that right'." Rincon v. Elizondo, 2022 WL 4241662, at *3 (S.D. Tex. 8/24/22)(quoting Sanchez v. Swyden, 139 F.3d 464, 466 (5th Cir. 1998)). Specifically on a Motion to Dismiss, the Appellees must "demonstrate that the law was clearly established in this area on the date of the incident. . . That is, the right must be "'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Lincoln v. Turner, 874 F.3d 833, 848-849 (5th Cir. 2017). "This inquiry does not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." Id.

Initially, Lewis avers that the District Court erred when it found that Appellees had adequately pleaded facts that, if true, would permit an inference that Lewis was liable under § 1983, as those facts, and the video, show that he did not violate the Appellees' civil rights.

## C.     No Violation of a Right

### 1.     Count One

Appellees' first Count alleges that the stop itself, at its onset, was in violation of the their right to be free from unlawful searches and seizures under the Fourth Amendment.  However, video evidence clearly shows Rosales commit at least one traffic violation for which he was lawfully stopped.  The presence of a traffic violation, committed in view of Lewis and Terrell is sufficient, by itself, to warrant dismissal of Count 1 as the right to be free from unlawful searches and seizures does not protect against a lawful stop to investigate an observed criminal violation.

Cases involving detention, but not arrest, often involve temporary investigative stops, as found in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and are referred to as Terry stops.  Such a stop, "is constitutionally allowed if it is based on reasonable suspicion of criminal activity. An officer's reasonable suspicion of criminal activity asserted to justify a Terry stop must be grounded on a "particularized and objective basis" and "the totality of the circumstances—the whole picture—must be taken into account." Elphage v. Gautreaux, 969 F. Supp. 2d 493 (M.D. La.

2013). "A traffic stop "must be temporary and last no longer than is necessary to effectuate the purpose of the stop, unless further reasonable suspicion, supported by articulable facts, emerges." United States v. Rodriguez, 802 F. App'x 90, 97 (5th Cir. 2020).

Here, reasonable suspicion that Rosales had committed a traffic offense was established when Lewis and Terrell observed Rosales fail to first signal a lane change, in violation of La. R.S. 32:104(D), and fail to signal within 100 feet of his turn, in violation of La. R.S. 32:104(B).(ROA.808, Manual Attachment A-1, Dash Camera Footage 0:21-0:24). While the District Court disagreed with this assertion, finding that the video evidence was unclear as to whether Rosales had signaled within 100 feet of the traffic signal, such a factual disagreement is immaterial to the qualified immunity analysis here, because reasonable suspicion may be based on a reasonable mistake of fact. Here, even if Lewis was factually incorrect in his observation that Rosales was closer than 100 feet before initiating his turn signal, such a mistake of fact can form the basis of reasonable suspicion to initiate the stop. See U.S. v. Montes-Hernandez, 350 Fed. Appx. 862, 864-865 (5th Cir. 2009)("the officer's

alleged mistake of fact regarding whether the frame obscured one-half of the issuing state's name provided the objective basis for reasonable suspicion."). As the Appellees helpfully pleaded, Lewis states on video that "PC" for the stop was under "104" a reference to La. R.S. 32:104.(ROA.38). This shows that Lewis had a reasonable, good faith belief that the Rosales car was less than 100 feet from Dorchester Drive prior to signaling. This Court has previously utilized audio to determine that an officer had reasonable suspicion based on a good faith belief that an offense had occurred in Terrell v. Town of Woodworth, 2024 WL 667690 (5th Cir. 2/19/24)(affirming qualified immunity where officers stated on body camera that the stop was initiated for speeding).

Further, the District Court did not address or discuss Rosales' failure to signal prior to changing lanes, as is required by La. R.S. 32:104(D). This is especially pertinent because the Appellees failed to allege that Rosales legally signaled prior to switching lane (i.e. there is no allegation that denies this ground for reasonable suspicion). The Dashcam video clearly shows Rosales' red vehicle moving from the right lane to the left lane without signaling. (ROA.808, Manual Attachment A-1, Dash

45

Camera Footage 0:21-0:24). Again, this observation was all that was necessary to initiate a traffic stop of Rosales' vehicle and the District Court erred when it found that Lewis did not have reasonable suspicion to initiate the stop based solely upon this illegal land change. The District Court's failure to consider that initial grounds for reasonable suspicion does not prevent this Court from ruling on those grounds. As this Court recently held in Rincon v. City of Laredo, Texas, 2025 WL 603883, at *5 (5th Cir. 2/25/25) it may, "affirm the lower court's decision on any grounds supported by the record." (quoting United States v. McSween, 53 F.3d 684, 687 n.3 (5th Cir. 1995)). More generally, "this court may decide a case on any ground that was presented to the trial court, we are not required to do so." Breaux v. Dilsaver, 254 F.3d 533, 538 (5th Cir. 2001).[3] Accordingly, this Court may and should, upon review of the video, find that the stop was initiated based on reasonable suspicion/probable cause provided by the officers' observation of Rosales' failure to properly signal

---

[3] Alternatively, "when attention has been focused on other issues, or when the court from which a case comes has expressed no views on a controlling question, it may be appropriate to remand the case rather than deal with the merits of that question in this Court." Bernhard Mech. Contractors, Inc. v. St. Paul Companies, 2008 WL 3244145, at *5 (5th Cir. 8/8/08)(quoting Dandridge v. Williams, 397 U.S. 471, 476, 90 S. Ct. 1153, 1157, 25 L. Ed. 2d 491 (1970)).

prior to changing lanes, in violation of La. R.S. 32:104(D).

###    2.    Count Two

The Second Count principally argues that the Plaintiffs' rights were violated when the traffic stop (lawful at its inception) was unconstitutionally extended by the officers on scene. Regarding extending a <u>Terry</u> stop, "After the initial stop, the officer's actions must be 'reasonably related in scope to the circumstances that justified the stop of the vehicle in the first place.'" <u>Washington v. Smith</u>, 639 F. Supp. 3d 625, 641 (E.D. La. 2022). Further, "If the officer develops reasonable suspicion of additional criminal activity during his investigation of the circumstances that originally caused the stop, he may further detain [the] occupants [of the vehicle] for a reasonable time while appropriately attempting to dispel this reasonable suspicion." <u>Id</u>. "Reasonable suspicion is a low threshold and requires only some minimal level of objective justification." <u>United States v. Castillo</u>, 804 F.3d 361, 367 (5th Cir. 2015). "As part of a traffic stop, an officer can request 'a driver's license and vehicle registration ... and ... run a computer check on both.'" <u>United States v. Alvarez</u>, 837 Fed. Appx. 296, 299 (5th Cir. 2020)(quoting <u>United</u>

States v. Brigham, 382 F.3d 500, 508 (5th Cir. 2004)).  The stop here lasted approximately 22 minutes and for the reasons detailed herein, this was not a constitutionally impermissible amount of time.

First, 22 minutes is in no way *per se* unreasonable for a Terry stop. See  United States v. Pack, 612 F.3d 341 (5th Cir.), opinion modified on denial of reh'g, 622 F.3d 383 (5th Cir. 2010)(stop of 35 plus minutes found to be reasonable).  Further, "There is 'no constitutional stopwatch on traffic stops.' 'The constitutionally tolerable duration of any seizure 'is determined by the seizure's mission.'" Washington v. Smith, 639 F. Supp. 3d 625, 641 (E.D. La. 2022)(citing United States v. Brigham, 382 F.3d 500, 511 (5th Cir. 2004) and United States v. Portillo-Saravia, 379 F. Supp. 3d 600, 613 (S.D. Tex. 2019).

Second, as seen in the video, Lewis was justified in extending the stop after he developed reasonable suspicion that additional criminal activity was afoot.  When Lewis initially approached Rosales to speak to him, Lewis was aware that Rosales had a license plate from New Mexico. (ROA.34).  Additionally, the officers were shortly greeted with hostility from Rosales as Rosales told Terrell that he was already aggravated.

(ROA.36). The video and pleadings thus shows that roughly 1 minute into the stop: Lewis had observed two traffic offenses (or reasonably believed he had), knew that Rosales had an out-of-state plate, and that Rosales was hostile). In this context, Lewis walked around the vehicle and observed ammunition in plain sight. This led him to ask Rosales if there were any guns in his vehicle. (ROA.36). Rosales responded that there was, but denied consent to retrieve it. (R.36, 38). These known facts (foreign plate, hostile driver, observed traffic offenses, possession of a firearm and ammunition but unwilling to remove it for officer safety) provided sufficient reasonable suspicion to extend the stop to investigate, which investigation required and consisted of the several steps that the Appellees criticize such as questioning them and conducting a plain view search of Rosales' vehicle. During that questioning, Lewis asked Rosales questions concerning his residency status in Louisiana. These questions were reasonably related to the reasonable suspicion developed because, as Lewis can be heard discussing on video, La. R.S.47:513 which requires non-resident vehicles be registered the same as resident's vehicles if the nonresident is "regularly employed or carrying on business within this state for a period of at least thirty consecutive days." (ROA.808, Manual

Attachment A-2, Officer Lewis Body Camera 5:50-6:30). Further, Lewis' questioning regarding the potential presence of drugs was reasonable based on the foreign plate, Rosales' stated hostility, the presence of a firearm, Rosales' previous encounter with law enforcement which he mentioned, and Rosales' statement that he traveled between New Mexico and Louisiana.

Additionally, evasive answers by both Rosales and Lasyone provided more reasonable suspicion to continue investigating. "Evasive behavior is a pertinent factor in determining reasonable suspicion." Illinois v. Wardlow, 528 U.S. 119, 124, 120 S.Ct. 673, 676, 145 L.Ed.2d 570, 576 (2000). While Rosales was forthcoming about the firearm when asked directly about it, Lasayone was untruthful when she told Lewis that a weapon was not present despite the officers' knowledge that ammunition was present in the car. (ROA.808, Manual Attachment A-2, Officer Lewis Body Camera 0:52-0:57) Additionally, Lasyone and Rosales gave incosistent responses when asked where the pair were coming from which justified further investigation. See  United States v. Alvarez, 837 Fed. Appx. 296 (5th Cir. 2020)(finding that the presence of firearms justified extending an investigative stop), see also Penney v. Wolsey, 2008 WL

2704303(S.D. Tex. 6/3/08), report and recommendation adopted in part, 2008 WL 2704301 (S.D. Tex. 7/10/08)(invasive responses may form the basis for reasonable suspicion).

Further, to the extent the stop was extended in order to move, search, or frisk the Appellees all such actions were justified under the circumstances, as will be detailed below, and accordingly any time added to the stop to take those actions did not unconstitutionally extend the stop.

Finally, while Rosales and Lasyone were stopped for roughly 22 minutes, their principal interactions with Lewis and Terrell ended about halfway through the stop. As the videos show, beginning 11 minutes after the stop was initiated, Terrell and Lewis returned to their unit to discuss the stop, and to take routine actions, such as checking Rosales' license and the registration of the vehicle. The Louisiana Supreme Court in State v. Lopez, 00-562 (La. 10/30/00), 772 So. 2d 90, 92-93, found that where a stop is initiated based on probable cause (as this stop was) Louisiana law, specifically La. C.Cr. P. Art. 215.1(D) allows the stopping officer  to "conduct[] a routine driver's license and vehicle registration check," and to "engag[e] in conversation with [the driver] and his passenger[.]" This

also logically extends to the time required to actually write out the citation and acquire the information necessary to do so, and accordingly those actions did not unconstitutionally extend the stop. The District Court erred by failing to acknowledge the settled jurisprudence that allows for a "a protective sweep for weapons during a traffic stop. . . where the officers reasonably believe that someone within police custody might gain access to weapons, either during the traffic stop or once they are returned to their vehicles," or apply it to the facts shown in the video. Davila v. United States, 713 F. 3d 248, 259 (5th Cir. 2013). Applying the case law cited herein to the well-pleaded facts of the Complaint, tempered by the truth found in the video footage, the Appellees failed to plead a plausible path to liability on the merits of their Fourth Amendment claims for unconstitutional extension of the stop entitling Lewis to qualified immunity.

### 3.    Count Three

This Count, which pertains to allegedly unconstitutional searches in violation of the Fourth Amendment, all searches were performed with consent of the Appellees and/or were constitutionally permitted for officer safety. Case law allows officers conducting an investigative stop to take

several actions in order to insure their safety and that of the public. "The police may take reasonable actions under the circumstances to ensure their own safety, as well as the safety of the public, during an encounter with a suspect." United States v. Abdo, 733 F.3d 562, 565 (5ᵗʰ Cir. 2013). The officers must "have reasonable grounds to believe [the suspects] are armed and dangerous. . ." Terry v. Ohio, 392 U.S. 1, 30, 88 S. Ct. 1868, 1884, 20 L. Ed. 2d 889 (1968).  However, they "need not be absolutely certain that an individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." Id. at 27.  Further, Lewis was clearly permitted to order both and Lasyone out of the vehicle, and to question them both.  See Maryland v. Wilson, 519 U.S. 408, 117 S. Ct. 882, 137 L. Ed. 2d 41 (1997); Pennsylvania v. Mimms, 434 U.S. 106, 98 S. Ct. 330, 54 L. Ed. 2d 331 (1977); and United States v. Alvarez, 837 F. App'x 296, 299 (5ᵗʰ Cir. 2020).

Under that jurisprudence, frisks of both Rosales and Lasyone were justified because the officers saw ammunition in plain sight, and a firearm was present.  It should be noted here that Lewis himself never frisked anyone.  Attempts to suggest that Lewis might be responsible for Terrell's

actions are undermined by clear jurisprudence that only an officer's own actions may form the basis of liability under 42 U.S.C. §1983. See Meadours v. Ermel, 483 F.3d 417, 421 (5th Cir. 2007)(collecting cases); Stewart v. Murphy, 174 F. 3d 530 (5th Cir. 1999)(looking to defendants' actions individually), See also Hernandez v. Tex. Dep't of Protective & Regulatory Servs., 380 F.3d 872, 883–84 (5th Cir.2004), See also Atteberry v. Nocona Gen. Hosp., 430 F.3d 245, 253 (5th Cir.2005) (same); see also Tarver v. City of Edna, 410 F.3d 745, 752–54 (5th Cir.2005). Lewis' actions were also justified because Lasyone initially denied that a gun was in the car. Indeed, any limited search of them, "'designed to discover guns, knives, clubs or other instruments of assault [was] [sic] permissible'" under United States v. Reyes, 349 F.3d 219, 225 (5th Cir. 2003)(citing United States v. Hill, 545 F.2d 1191, 1193 (9th Cir.1976)).

Next, the search of Rosales' pockets was justified under the circumstances for the same reason the frisk was: protection of officer safety in a search for weapons. It was further justified by Rosales' consent. Rosales has argued before that he did not provide consent for that search, but his consent (demonstrated by turning out his pockets) is present on the video. Further, under the Fifth Circuit's consent to search

analysis, found in United States v. Alkheqani, 78 F. 4th 707, 720 (5th Cir. 2023).

> Consent is determined based on the totality of the circumstances, and this Court looks at six factors:
>
> (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence will be found.
> Id. at 720.

The first factor–voluntariness of defendant's custodial status–weighs against voluntariness, because Rosales was detained, but the other factors are either neutral or weigh in favor of voluntariness. No coercive police procedures (factor 2), such as "threats of force, promises, trickery, or deceit designed to pressure [Rosales] into consenting" are present on the video. Appellees pleaded that the officers asking Rosales to empty his pockets "indicated a condition: Rosales needed to empty his pockets himself or else the officers would search him themselves." However, this is nothing more than attorney speculation that does not have to be accepted as true at this stage, especially in light of the lack of a search of the vehicle itself after permission to remove Rosales' firearm was denied.

55

The extent and level of Rosales' cooperation also weighs in favor of voluntariness. The Appellees do not deny that Rosales turned out his own pockets. (ROA.40-41). Like the individual in <u>Alkheqani</u> whose cooperation weighed in favor of voluntariness, Rosales was "more cooperative than not" and "though he was. . . frustrated at times, he was 'generally responsive and polite.'" <u>Id</u>. at 721. The next factor (knowledge of the right to refuse) also weighs in favor of voluntariness. Again, the Appellees' speculation that they could not refuse is not seen in the video. Multiple times during the encounter, Lewis reminded Rosales that his cooperation was voluntary. Though not directly concerning the search, Rosales was told that he could refuse to answer Lewis' questions and had observed for himself that Lewis would respect his no, when he denied Lewis permission to retrieve the firearm from the vehicle. The fifth factor–education and intelligence–weigh in favor of voluntariness as no observable facts suggest, and no pleadings, suggest that Rosales is anything other than a generally educated and intelligent person. Again, similar to the individual in <u>Alkheqani</u>, Rosales' intelligence can be inferred from the questions and his responses during the encounter. Finally, "An awareness or belief that no incriminating evidence will be found weighs in favor of a

finding of voluntariness." Id. at 722. (quoting United States v. Soriano, 976 F.3d 450, 458 (5th Cir. 2020). Here, there is no dispute that nothing was found in Rosales' pockets, and no indication, either in pleadings or on video, that Rosales believed anything incriminating would be found in his pockets. Accordingly, as five of the six factors weigh in favor of voluntariness, Rosales' consent was voluntarily given and no unlawful search occurred. As such, Lewis is entitled to qualified immunity on the search counts and the District Court erred when it found that the Appellees' had adequately pleaded facts showing that they could plausibly defeat his right to immunity.

### 4.    Count Four

This Count asserts that Lewis violated the Appellees' First Amendment rights by refusing to allow them to video the encounter. But, any right which either of the Appellees may have had to record the encounter was reasonably limited in time, manner, and means because of the presence of an unsecured firearm and ammunition in the vehicle. This is key because *Lasyone's phone was in the car with the weapon.* The right to record police encounters is not absolute, but is instead subject to time, place, and manner restrictions. This was a place and manner (the side of

57

the road during a stop where one of the recording device needed to be retrieved from a car with a known firearm) that allowed for reasonable restriction on the general right to record police encounters.  As shown on the video, at the time Lewis was asked to allow Lasyone to film:

1)   Lewis had observed at least one traffic violation and initiated the stop based on those infractions;

2)   Ammunition was seen in plain view in the vehicle;

3)   After seeing the ammunition, Rosales was asked about the presence of a firearm, to which he admitted there was a pistol in the car; and,

4)   Lewis was forbidden to search the car or retrieve the firearm.

So Lewis was presented with the choice to either refer Lasyone and Rosales to his and Terrell's body camera footage or allow Lasyone to go back into the vehicle to retrieve her phone (and just as easily the firearm). Jurisprudence on investigative stops allows an officer in Lewis' position to remove all passengers from a vehicle to ensure officer safety, and *a fortiori* allows him to prevent them from going back into the vehicle, for officer safety. Under this totality of the facts and circumstances, Lewis' decision to prevent Lasyone from going back into the vehicle for his and Terrell's safety did not violate either Rosales or Lasyone's First

Amendment rights.  Additionally, Rosales himself only asked to record at the tail end of the stop, while he was still detained, when to do so would have disrupted and extended the stop.  Accordingly, Lewis is entitled to qualified immunity on the First Amendment claims.

### D.    Clearly Established Law

Though Lewis maintains, as detailed above, that none of his actions during the encounter with Rosales and Lasyone violated their civil rights in any way, he also asserts that he is entitled to qualified immunity based on the second prong of the traditional qualified immunity analysis. That prong requires the Appellees to show that Lewis' acted unreasonably in light of clearly established law.  Case law must be "sufficiently clear to put a reasonable officer on notice" on the day of the incident, that his conduct was unconstitutional.  The rights asserted by the Appellees were not so clearly established at the time of the incident, entitling Lewis to qualified immunity.

In the Report and Recommendation adopted by the District Court the clearly established law of Count 1 was described as "officers cannot stop motorists without reasonable suspicion of criminal activity." (ROA.1065). The District Court also stated that, "As this Court noted in

the underlying case, 'it was well established at the time of the traffic stop that the Fourth Amendment does not permit the fabrication of traffic offenses against innocent persons as a pretextual reason to detain them, and no reasonable officer would believe otherwise." (ROA.1065). First, the undersigned could not find the quoted language anywhere. Second, the case cited generally for this proposition, <u>Bates v. Normand</u>, 703 F. Supp. 3d 775, 790 (W.D. La. 2023) concerns fabrication of evidence by planting drugs during a search and stands only for the generic axiom that, "it is a violation of someone's Fourteenth Amendment to fabricate evidence and that 'no reasonable law enforcement officer would have thought it permissible to frame somebody for a crime he or she did not commit." Such general platitudes of law are insufficient under the Supreme Court's most recent decisions concerning established law for the purposes of qualified immunity. This rule was followed, in <u>Guerra v. Castillo</u>, 82 F. 4th 278, 285 (5th Cir. 2023) when this Court recently held:

> The Supreme Court has repeatedly told courts ... not to define clearly established law at a high level of generality. The dispositive question is whether the violative nature of particular conduct is clearly established. **This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. (emphasis added).**

Despite this repeated guidance from the Supreme Court, the District Court here found that the applicably specific clearly established law on the initiation of the traffic stop amounted to the truism that it would be unlawful to frame someone or fabricate evidence.  Surely the Supreme Court's recent guidance requires a District Court to look deeper than a hornbook when searching for clearly established law. Beyond the simple fact that Lewis neither fabricated evidence, nor framed Rosales for anything, the clearly established law at the time of the stop required that an investigative stop be based on reasonable suspicion of a criminal offense, or *reasonable, but mistaken belief that an offense had occurred.* See District of Columbia v. Wesby, 583 U.S. 48, 65, 138 S. Ct. 577, 591, 199 L. Ed. 2d 453 (2018)(officers may be entitled to qualified immunity where they reasonably but mistakenly believe probable cause exists). See also U.S. v. Montes-Hernandez, 350 Fed. Appx. 862, 868 (5th Cir. 2009). As noted above, the video shows Rosales commit at least one traffic offense in front of Lewis (failing to signal a lane change) and another that Lewis, in good faith, believed he observed (failure to signal within 100 feet of a turn).  Under clearly established law at the time of the incident, observing, or believing that a traffic offense occurred was all the

reasonable suspicion that Lewis needed to initiate the stop, and accordingly, he is entitled to qualified immunity under the clearly established prong as well.

Regarding the length of the stop, the law was not clearly established, at the time of the incident, that Lewis could not extend the stop to investigate potential additional criminality based on a suspect's immediate hostility, and foreign license plate, when investigating an observed traffic offense. Nor was the law clearly established that the stop could not be further extended based on the presence of ammunition and a firearm in a stopped vehicle, denial of permission to remove the weapon, inconsistent statements and evasiveness. Again the District Court supplied a generic statement of the law: "The Fourth Amendment prohibits prolonging a traffic stop beyond the time reasonably required to address the traffic violation and attendant safety concerns. 'Authority for the seizure. . . ends when tasks tied to the traffic infraction are–or reasonably should have bene– completed."(ROA.1065). Note that this does not mention the established law on constitutional reasons to extend the stop, how reasonable suspicion of additional criminality might be developed, how long further investigation of such suspicion may last, etc.

62

A case which honors the specificity required by the Supreme Court, is Washington v. Smith, 639 F. Supp. 3d 625 (E.D. La. 11/8/22), decided mere months after the Rosales stop and concerned materially similar issues.

In Washington the plaintiffs brought suit against St. Tammany Parish Sheriff's deputies who stopped them for improper turn and failure to use a turn signal. During the course of that roughly 20 minute stop, the deputies explored various avenues of investigation based on reasonable suspicion that developed during the stop, before ultimately ticketing the driver. Like the Appellees here, the plaintiffs in Washington brought several civil rights claims including for unconstitutional extension of the initial stop, unlawful search of the driver, unlawful seizure of the passenger, as well as other claims related to discrimination. The deputies filed an untimely Motion to Dismiss under 12(b)(6) which was converted to a Motion for Judgment on the Pleadings under 12(c). Through its ruling, the district court set out the established law at the time of the incident here. That court found that running a warrant check on the passenger, refusing to allow the driver to access his car to grab paperwork, and walking around the car and looking inside with a

flashlight were not unconstitutional extensions of the stop particularly because additional reasonable suspicion was developed during the stop. Where similarly situated officers initiated a stop based on similarly observed traffic infractions (turn signal violations), extended that stop by roughly 20 minutes while investigating additional reasonable suspicion that arose during the stop the clearly established law could not suggest to Lewis that his actions violated the Appellees' civil rights. Instead, Washington shows that all reasonable officers would not have know that Lewis' actions taken on June 15, 2022 were unconstitutional.

Though the District Court did not address them, the Appellees' arguments offered their own clearly established law in opposition to Lewis' Motion. Appellees assert that forcing Rosales to empty his pockets was an impermissible extension of the stop because he had already been frisked, citing Minnesota v. Dickerson, 508 U.S. 366, 113 S. Ct. 2130, 124 L. Ed. 2d 334 (1993). (ROA.937-938).  This is inapplicable here, however, because the search at issue in Dickerson was a continuous search by the officer which began as lawful, but impermissibly expanded when he reached into the suspect's pocket.  Here, while Rosales had been frisked, Dickerson does not stand for the proposition that it was impermissible for

64

Lewis to ask for Rosales' consent to further searching. As detailed above, Rosales voluntarily consented to the search at issue, and no clearly established law, presented by the Appellees to the District Court, or by the District Court itself, shows that every officer in Lewis' position should have known that it was unconstitutional to ask an individual to reveal the contents of their pockets after a frisk had been performed. Again, this is the detailed required by the Supreme Court and which is not present here.

The Appellees next asserted that the stop was impermissibly extended while "non-routine" checks were performed. (ROA.938). But Appellees acknowledge that routine checks regarding driver's license, warrants, inspection and proof of insurance may be run without unconstitutionally extending the stop but speculate that the searches here were "non-routine" including asserting that this speculation must be accepted at this stage.(ROA.939). Again, this fails to provide sufficiently established law that Lewis allegedly violated. As the Appellees acknowledge, the wait was required because of a criminal history check, which is explicitly allowed under the case law cited, and based upon reasonable suspicion because the Appellees mentioned other legal troubles during the encounter. Any suggestion that the proper checks *should* have

taken less time and the only reason they were not completed sooner was the presence of non-routine searches is again, rank speculation that *does not* have to be accepted as fact at this stage.

Regarding the extension of the stop to investigate potential additional criminality, the Appellees have previously offered case law standing for the proposition that individual details, taken by themselves, cannot form the basis of reasonable suspicion.(ROA.940-948). However, this is not an instance where Rosales' refusal to remove the weapon *alone* led to reasonable suspicion. Or a case where evasive answers *alone* led to reasonable suspicion. Instead, as detailed herein and on the video, a confluence of facts learned during the encounter allowed reasonable suspicion to develop over time, which was allowed to be dispelled by general questioning regarding potential other crimes. Again, neither the District Court, nor the Appellees have produced sufficiently specific case law that would allow *every* officer in Lewis' position to know that his actions violated the Appellees' civil rights. Indeed, the prevalence of case law both affirming and rejecting developed reasonable suspicion during investigative stops shows precisely that the *law was not clearly established* at the time of the incident, and accordingly Lewis is entitled

to qualified immunity on Count regarding the extension of the stop.

As to Count 3, involving the search and frisk, the District Court principally relies upon Terry v. Ohio, 392 U.S. 1 (1968), a case decided 54 years prior to the underlying stop, to supply the established law for qualified immunity purposes. (ROA.1066). This is plainly insufficient to defeat qualified immunity.  As detailed above, the established law, at the time of the incident, did not allow Lewis to search Rosales' pockets without consent, but did allow him to seek consent for a search which Rosales freely gave.  Regarding the frisk, Appellees have previously asserted that established law required that the officers believe that Rosales was both armed and dangerous before frisking him citing United States v. Thomas, 2021 WL 1957412 (5th Cir. 5/17/21).(ROA.927-928). Assuming this standard is correct, the Plaintiff has still not produced, nor did the District Court cite, a sufficiently specific case which would alert Lewis that a frisk of a suspect by an officer who initiates a stop based on reasonable suspicion of a traffic violation by that suspect with out of state plates, who is immediately hostile, and who has ammunition in his vehicle (which Lewis observed, and Terrell had constructive knowledge of for the purposes of establishing reasonable suspicion/probable cause) would

violate that individual's civil rights. Hostility provided reasonable suspicion that Rosales was dangerous, and the presence of ammunition (and a firearm in the vehicle) provided reasonable suspicion that he was armed. Because his actions were not unconstitutional under the clearly established law of the time, Lewis is entitled to qualified immunity on the frisk and search Count.

Finally, the District Court and Appellees cite to general case law which allows the filming of officers performing their official duties in public, subject only to reasonable time, place, and manner restrictions. Turner v. Lieutenant Driver, 848 F. 3d 678 (5th Cir. 2017). (ROA.948-950, 1066-1067). Turner lacks sufficient factual similarity to this case to provide anything other than that well-worn axiom of First Amendment jurisprudence. In Turner it was undisputed that the plaintiff was detained *because he was filming a police station*. There was no other alleged violation that led officers to approach him. In contrast, here the Appellees were not detained because they were filming Lewis. Instead they base their First Amendment claim on being prevented from going back into their vehicle to acquire recording equipment (a phone) or to be allowed to record during the stop itself which was already being recorded. Such a

right to return to the vehicle to retrieve recording equipment and/or allowing a suspect to record during a traffic stop was not established in the Fifth Circuit on June 15, 2022. Specifically, the district courts in Durant v. Gretna City, 2020 WL 263669, at *1 (E.D. La. 1/17/20), aff'd sub nom. Durant v. Brooks, 826 F. App'x 331 (5th Cir. 2020) and Dave v. Laird, 2021 WL 7367084, at *13 (S.D. Tex. 11/30/21), both looked to this exact question–whether an individual has a First Amendment right to film their own detention while it is happening–and both found that right did not exist in the Fifth Circuit. The court in Dave discussed this stating:

> Although the general right to film the police is clearly established in this circuit, Dave has cited no Fifth Circuit precedent or persuasive authority indicating that he had the right to personally film his own detention, with his own hand-held camera phone, while it was happening. This Court has also searched and found no authority to that effect.
>
> This is, perhaps, not altogether surprising. Courts within this jurisdiction and elsewhere have pointed out that establishing such a right could create unreasonable or even potentially dangerous obstacles for law enforcement.
> Id. at *12.

These district court rulings show that no Fifth Circuit case put Lewis on notice that preventing Lasyone from going back into the vehicle for her phone or preventing Rosales from taking his phone back from

69

officers to begin recording during the stop itself, all justified by the valid governmental interest in officer safety, violated the rights of either Appellee. As the court in <u>Dave</u> suggested, to allow a detainee, like Rosales, to control his detention by demanding a "right" that trumps the duties and responsibilities of a law enforcement officer during that detention could create obstacles for law enforcement. If Rosales or Lasyone have the right to interrupt at any point of the stop in order to ask to access a phone to record, such a demand could be made by another detainee during a frisk, immediately prior to an officer reaching a gun shaped bulge in that detainee's pocket. The Appellees' logic, taken to its natural conclusion, would give a detainee or arrestee a right to call a "time out" during any part of a detention or arrest, triggering liability under the First Amendment if not immediately allowed. This was not the clearly established law at the time of the incident.

More recently, in <u>Rincon v. City of Laredo, Texas</u>, 2025 WL 603883, *6 (5th Cir. 2/25/25), this Court found that First Amendment jurisprudence was not so clearly established to have put an officer on notice, "that an officer violates the First Amendment by confiscating the phone of an armed, unidentified, and uncooperative suspect for fifteen minutes while

he is handcuffed during a <u>Terry</u> stop." *This* is the proper level of specificity that clearly established law must attain before it binds officers like Lewis. Accordingly, because neither the Appellees nor the District Court cited any case law to show that Lewis should have been on notice that failing to let someone, removed from a vehicle during a <u>Terry</u> stop for officer safety, return to a vehicle with ammunition and an unsecured weapon, to retrieve a phone to record a police encounter,  violated the First Amendment he is entitled to qualified immunity.  Further, because neither the Appellees nor the District Court cited any case law to show that Lewis should have been on notice that rejecting a request to interrupt an in-progress stop in order to begin filming, rather than stop filming that had already begun, violated the First Amendment, he is entitled to qualified immunity.

## VI.  CONCLUSION:

For the reasons detailed herein, the District Court erred when it denied Jim Lewis' Motion for Judgment on the Pleadings based on qualified immunity.  Lewis accordingly prays that this Honorable Court reverse that decision, and find that he is entitled to qualified immunity on all of the Appellees' constitutional claims.

Respectfully Submitted:

**PROVOSTY, SADLER & DELAUNAY, APC**

/s/H. Bradford Calvit
H. Bradford Calvit (#18158)
bcalvit@provosty.com
Eli J. Meaux (#33981)
emeaux@provosty.com
John D. Ryland (#20355)
jryland@provosty.com
4615 Parliament Dr., Suite 200 (71303)
P.O. Box 13530
Alexandria, LA 71315-3530
Phone: (318) 767-3133 Fax: (318) 767-9588
ATTORNEY FOR DEFENDANT - APPELLANT,
JIM LEWIS

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 9th day of February, 2026, I electronically filed the foregoing  DEFENDANT - APPELLANT'S BRIEF ON BEHALF OF JIM LEWIS with the Clerk of Court by using the CM/ECF system which will send notice of electronic filing to the following:

| | |
|---|---|
| Marie L Miller<br>Institute for Justice<br>3200 N Central Ave Ste 2160<br>Phoenix, AZ 85012<br>480-557-8300<br>Fax: 480-557-8305<br>Email: mmiller@ij.org | Joseph Pershing Beck, III<br>Law Offices of Joseph Beck<br>P O Box 6<br>Ball, LA 71405<br>318-640-9202<br>Fax: 318-640-9203<br>Email: joe@joebecklaw.com |
| Patrick M Jaicomo<br>Anna Bidwell<br>Institute for Justice<br>901 N Glebe Rd Ste 900<br>Arlington, VA 22203<br>703-682-9320<br>Email: pjaicomo@ij.org; Email: abidwell@ij.org | |
| COUNSEL FOR PLAINTIFFS - APPELLEES,<br>MARIO ROSALES; GRACIE LASYONE | |

Misty S Antoon
Law Office of Misty S Antoon
2312 S MacArthur Dr
Alexandria, LA 71301
318-792-3514
Email: misty@antoonlaw.com
COUNSEL FOR DEFENDANT - APPELLANT,
SAMUEL TERRELL

Hon. Jerry Edwards, Jr.
United States District Judge
515 Murray St., Suite 233
Alexandria, Louisiana 71301
(318) 484-1210
Email: edwards_motions@lawd.uscourts.gov

Hon. Joseph H. L. Perez-Montes
United States Magistrate Judge
U. S. Court House and Post Office Building
515 Murray St., Room 331
Alexandria, Louisiana 71301
(318) 473-7510
Judicial Assistant
Yvonna Tice
Email: yvonna_tice@lawd.uscourts.gov
(318) 769-8810

　　　　I further certify that I have forwarded the foregoing document via facsimile and/or first-class mail to the following non-CM/ECF participants: NONE

　　　　　　　　　/s/ H. Bradford Calvit
　　　　　　　　　OF COUNSEL

## <u>CERTIFICATE OF COUNSEL FOR DEFENDANT - APPELLANT</u>

Counsel also certifies that on this 9th day of February, 2026, the foregoing instrument was transmitted to Mr. Lyle W. Cayce, Clerk of the United States Court of Appeals for the Fifth Circuit, via the Court's CM/ECF Document Filing System, https://ecf.ca5.uscourts.gov/ in compliance with FED. R. APP. P. 25(b) and (c), on all registered counsel of record.

Counsel further certifies that:

1)    required privacy redactions have been made in compliance with Fifth Circuit Rule 25.2.13; and

2)    the electronic submission is an exact copy of the paper document in compliance with Fifth Circuit Rule 25.2.1.

<u>/s/ H. Bradford Calvit</u>
OF COUNSEL

## <u>CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT</u>

Certificate of Compliance with Type-Volume Limit,
Typeface Requirements, and Type-Style Requirements

1.      This document complies with the type-volume limit of FED. R. APP. P. 32(a)(7)(B) and the word limit  because, excluding the parts of the document exempted by FED. R. APP. P. 32(f) and FED. R. APP. P. 32(a)(7)(B)(iii):

√        this document contains *11,933* words, **or**

☐        this brief uses a monospaced typeface and contains *[state the number of]* lines of text.

2.      This document complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type-style requirements of FED. R. APP. P. 32(a)(6) because:

√        this document has been prepared in a proportionally spaced typeface using *Word Perfect 2021* in *Century Schoolbook font 14 point typeface, and footnotes in 12 point* **or**

☐        this document has been prepared in a monospaced typeface using *[state name and version of word-processing program]* with [state number of characters per inch and name of type style].

/s/ H. Bradford Calvit
Attorney for Jim Lewis
Dated: 02/09/26